UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PHIL FORNER,

               Plaintiff,                            Case No. 1:05-CV-694

v.                                          HON. GORDON J. QUIST

ROBINSON TOWNSHIP BOARD and
BERNICE BERENS, in her individual and
official capacity, Jointly and Severally,

               Defendants.

_____/

## OPINION

Plaintiff, Phil Forner ("Forner"), brought this claim against Defendants, Robinson Township Board ("Township") and Bernice Berens, alleging violations of his First Amendment right to free speech under 42 U.S.C. § 1983, and of the Michigan Whistleblowers' Protection Act (WPA), MCL § 15.361, *et seq.* Now before the Court is the Defendants' motion for summary judgment. For the following reasons, the Court will grant the Defendants' motion for summary judgment on the First Amendment claim under 42 U.S.C. § 1983, and dismiss Forner's state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### I. Background

The Township is a governmental entity with its principal place of business in Ottawa County, Michigan. Berens served as the supervisor of the Township during the time that Forner's alleged claims arose. Forner was hired by the Township to work as its mechanical inspector in 1999. Forner was an at-will employee. In 2003, the Township hired Forner as a building inspector, in addition to

his mechanical inspector position.  As a building inspector, Forner worked with the Township building official, Bill Easterling, and was involved in the Township's meeting and work sessions during which the Township and state and local agencies discussed and planned matters related to various building codes.

In January 2005, an area of Robinson Township around Limberlost and VanLopik streets ("flood area") flooded due to a buildup of ice on the Grand River.  As a result, electrical service to the flood area was suspended, and the Ottawa County Health Department directed that residents in the flood area could not use wells and septic systems.  At the Township's direction, Easterling suspended the certificates of occupation of all structures located in the flood area.  Forner and Easterling determined which provisions of the Michigan Administrative Code governed the situation and, after consulting with the Township's attorneys on February 11, 2005, established instructions for flood area residents to regain their certificates of occupancy and began communicating this information to those residents.

The Township received complaints from flood area residents who were upset with the requirements and with Forner.  At a meeting on March 21, 2005, the Township directed Forner to fax violations to contractors and to "opt for better communication and clearer instructions on what needs to be done," over a trial period of six months. (Defs.' Br. in Supp. Mot. Summ. J. Ex. 6.)  On April 18, 2005, the Township approved a voluntary separation agreement entered into with Easterling.  Forner was then appointed as the interim building official for the Township, while continuing to work as building inspector and mechanical inspector.  The Township solicited applications for the building official position, and Forner submitted an application.  The Township voted against hiring Forner as building official on June 20, 2005, and on July 13, 2005, hired Doug

2

Hopkins from Imperial Municipal Services as its building official and also as a building inspector. The Township informed Forner that his building inspections duties would be limited to closing out his ongoing building inspection matters outside of the flood area.

On or about May 19, 2005, a citizen filed a notice of intent to file a recall petition against two Township board members, including Berens.  In June and July 2005, Forner and the Township expressed disagreement regarding the interpretation and enforcement of building codes.  For example, Forner sent several emails to the Township's counsel expressing his disagreement with the Township's alleged attempt "to find a way to undermine building department's efforts to enforce the plain meaning of the code." (Defs.' Br. in Supp. Mot. Summ. J. Ex. 8.)  At some point in June, Berens requested that Forner not go to the flood area due to residents' threats to Forner and the threat of a lawsuit against the Township arising from its building code requirements in the flood area. (Berens Dep. at 133-34.)  Forner disregarded Berens' instructions, which led to a confrontation with flood area residents who were hostile to Forner. (Pl.'s Br. in Opp. to Mot. Summ. J. Ex. 31; Berens Dep. at 135.)  Once Hopkins assumed the building official position, Forner began requesting that Hopkins enforce correction notices issued by Forner.  (Pl.'s Br. in Opp. to Mot. Summ. J. Exs. 20, 21, 33.)

On July 29, 2005, Forner wrote a letter to the editor of the *Grand Haven Tribune* which was published.  In the letter, Forner questioned the decision of the Township to hire Hopkins rather than Forner because Forner's bid was for less money than Hopkins' bid.  The letter also alleged the possibility of misconduct by the Township.  The letter claimed that the Township did not want Forner to enforce the building code in the manner advocated by Forner, and stated, in part:

3

I guess re-assignment or worse is what happens to a Township building inspector who does not follow Supervisor Berens' instructions to stay off Limberlost and VanLopik and instead uniformly enforces the state building code by performing requested inspections for those who are trying to legally re-occupy and issues correction notices to those who are obviously violating the code. For the residents' sake I truly hope that no quid-pro-quo deals or understandings took place; like person(s) who made it clear that they do not want to abide by the state codes agreeing not to support the recall of Berens and Clark if the then current building inspectors were re-assigned or fired. One could wonder about a township decision to pay almost double for new building inspection services when representatives from the state and the code publishing organizations both indicated that the previous building inspectors' interpretations and application of the codes' flood provisions were appropriate in this instance; yet even with this information Supervisor Berens with the support of Treasurer Clark chose to change building inspectors.

(Defs.' Br. in Supp. Mot. Summ. J. Ex. 9.)  The letter also stated that Forner was "the primary building inspector for Robinson Township for the past two years," thanked the residents of Robinson Township, and conveyed Forner's intention to "continue to do my best as [Robinson Township's] mechanical inspector, plan review, and as its building inspector as assigned." *Id*.

Forner wrote a letter to the Township on August 15, 2005, requesting reconsideration of the decision to take away Forner's building inspector duties, alleging that the Township took away his duties because he "made it clear that [he] was going to follow the law in the flood-damaged areas and was going to report anyone who wasn't," and indicating that if his demands were not met he was considering pursuing legal remedies. (Defs.' Br. in Supp. Mot. Summ. J. Ex. 7.)  Forner also requested "a public apology from Supervisor Berens for her numerous public statements regarding my building inspection duties," a formal resolution affirming Forner's handling of flood area building code enforcement, and the Township's "demonstrated enforcement of or compliance with" the state building code. (*Id*.) On September 15, 2005, the Township met to address the demand letter

and Forner's six month probationary term that began in March. The Township agreed to hold a disciplinary hearing in October to address Forner's employment.

On September 14, 2005, Forner filed an appeal to the Robinson Township Construction Board of Appeals (CBA), regarding Hopkins' alleged failure to enforce the correction notices issued by Forner. The CBA heard Forner's appeal on October 12, 2005, and on October 18 granted Forner's request by issuing an order instructing Hopkins to enforce Michigan Residential Code as interpreted by Hopkins. Forner later appealed this decision to the Michigan Construction Code Commission.

Forner filed this lawsuit on October 7, 2005, to meet the statute of limitations for filing a complaint under the Michigan Whistleblower's Protection Act. The Township met on October 13, 2005, and heard statements from Forner and citizens. The Township also discussed its concerns with Forner's job performance and the letter to the editor of the *Grand Haven Tribune* was mentioned. However, pursuant to the advice of the Township's counsel, the decision regarding Forner's employment was to be limited to Forner's potential conflict of interest as both a mechanical inspector and a contractor providing mechanical services to residents, and Forner's demands in his letter of August 15, 2005. The Township voted to terminate Forner from his mechanical inspector position. (Defs.' Br. in Supp. Mot. Summ. J. Ex. 14.)

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable

jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. Discussion

**A.    First Amendment Protection Under § 1983**

Forner claims that the Township's decision to terminate his employment was based, at least in part, on his letter to the *Grand Haven Tribune* that publicly criticized the Township. To establish a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983, a public employee must demonstrate: "(1) that he was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of his constitutional rights." *Vaughn v. Lawrenceburg Power Sys.* 269 F.3d 703, 715 (6th Cir. 2001). Under the first element, to determine whether the activity was constitutionally protected, "[t]he threshold question is whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citing *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1186 (6th Cir. 1995)). "If the speech relates to a matter of public concern, then the court employs the balancing test outlined in *Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968), to determine if the employee's free speech interests outweigh the efficiency interests of the government

6

as an employer."[1]  *Id.*.  The Defendants contend that Forner's speech was not constitutionally protected and that the termination of Forner's employment was not motivated by the allegedly protected speech.

### 1.     Forner's Speech Addressed a Matter of Public Concern

An employee's speech touches a matter of public concern if it relates "to any matter of political, social, or other concern to the community." *Connick  v. Myers*, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690 (1983).  Unprotected speech includes a public employee's speech dealing only with matters of personal interest and "'speech that involves nothing more than a complaint about a change in the employee's own duties [which] may give rise to discipline without imposing any special burden of justification on the government employer." *Vaughn*, 269 F.3d at 716 (quoting *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 466, 115 S. Ct. 1003, 1013 (1995)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48, 103 S. Ct. at 1690. Whether the speech constituted protected conduct is a question of law. *Id*. at 148 n.7, 103 S. Ct. at 1698 n.7.

---

[1] This case is distinguished from the Supreme Court's recent decision in *Garcetti v. Ceballos*, --- U.S. ---,126 S. Ct. 1951 (2006), which involved an employee's claim that his First Amendment rights were violated when he suffered retaliatory employment actions based on a memorandum that he wrote to his employer pursuant to his official duties. In *Garcetti*, the Court stated that the "controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy.  That consideration - the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case - distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline." *Id*. at 1959-60.  The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960.  Unlike the circumstances in *Garcetti*, Forner's letter to the editor of the *Grand Haven Tribune* was not written pursuant to his official duties; that is, the letter was not "part of what he . . . was employed to do." *See id*.  Therefore, Forner's speech falls within the category of "statements or complaints (such as those at issue in cases like *Pickering* and *Connick*) that are made outside the duties of employment" and, if found to address a matter of public concern, "the First Amendment requires a delicate balancing of the competing interests surrounding the speech and its consequences." *See id*. at 1961.

Forner has shown that his speech touched a matter of public concern.  The letter to the *Grand Haven Tribune* questioned the adherence of the Township to its policy of enforcing state building codes.  Forner's discussion of the Township's enforcement policies related to the Michigan building code is a matter of public concern.  *See Latham*, 395 F.3d at 265 (finding that the enforcement decisions of the Ohio Attorney General in consumer protection cases are a matter of public concern).  Moreover, at a time when Berens and another member of the Township were facing the possibility of a recall election, Forner's allegations regarding Berens were particularly relevant to the public as addressing a potentially political matter.

The Defendants argue that Forner's letter is merely an expression of a "'quintessential employee beef' of incompetent or insensitive management" and does not address a matter of public concern.  *See Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999).  While the tenor of portions of the letter are consistent with a disgruntled employee's private complaints over losing his job, such as Forner's displeasure at losing out on the bidding for the building official position and having the majority of his building inspector duties reassigned, the letter also presents to the community the discord between Forner and the Township regarding the application, interpretation, and enforcement of state building codes in the flood area.  The letter expresses Forner's belief that he "had done [his] best to uniformly administer and enforce the state codes in an equitable and consistent manner," while questioning the Township's commitment to enforcing such codes.  The letter also indicated that Forner had some support for his policies because "representatives from the state and the code publishing organization both indicated that the previous building inspectors' interpretation and application of the codes' flood provisions were appropriate in this instance."  Based on all of the circumstances surrounding the letter and viewing the facts in the light most favorable to Forner, the Court concludes that Forner has shown that the letter to the *Grand Haven Tribune* touched a matter of public concern.

2.     **Township's Efficient Public Service Interest Outweighs Forner's Free Speech Interest**

After concluding that Forner's speech touched a matter of public concern, the Court must weigh Forner's free speech interests against the employer Township's interest in efficient public service. *Rose*, 291 F.3d at 920. However, in cases where a government employee occupies a confidential or policymaking position, "[w]hen such an employee speaks in a manner that undermines the trust and confidence that are central to his position, the balance definitively tips in the government's favor because an overt act of disloyalty necessarily causes significant disruption in the working relationship between a confidential employee and his superiors." *Id*. at 923 (citing *Pickering*, 391 U.S. at 570, 88 S. Ct. at 1735).

The Sixth Circuit has described four categories of employees who fall within the policymaking or confidential employees exception: (1) positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted; (2) positions to which a significant portion of the total discretionary authority available to category one position holders has been delegated, or positions not named in law but possessing the same type of authority held by category one positions in other jurisdictions; (3) confidential advisors of category one or two position holders; and (4) positions filled by balancing out political party representation or by balancing out selections made by different governmental agencies or bodies. *Latham*, 395 F.3d at 267; *McCloud v. Testa*, 97 F.3d 1536, 1557 (6th Cir. 1996). To determine whether an employee fits into one of these categories, a court "must examine the inherent duties of the position, rather than the actual tasks undertaken by the employee."*Id*. While the "'inherent duties of the position' are not necessarily those that appear in the written job description and authorizing statute, such descriptions

can be instructive." *Latham*, 395 F.3d at 267.  "A position need not fit perfectly into one of the 'generic' categories in order to be a 'confidential or policymaking' job."  *Silberstein v. City of Dayton*, 440 F.3d 306, 319 (6th Cir. 2006).  The Defendants allege that Forner, acting as the Township's interim building official and as a building inspector, falls within categories one and two.

Citing Michigan Administrative Code Rules 408.30501 and 408.30502, the Defendants argue that Forner, as a building inspector and interim building official for the Township, falls within category one because both positions are named in relevant state law and are granted discretionary authority with respect to enforcing or carrying out the law or policy.  Rule 408.30501 defines "building official" as "the person who is appointed and employed by a governmental subdivision, who is charged with the administration and enforcement of the state codes specified in R 408.30499, and who is registered in compliance with 1986 PA 54, MCL 338.2301 et seq."  MCL § 338.2302(d) defines building official as "a construction code enforcement person working as an inspector, or plan reviewer, or actively engaged in the administration and enforcement of adopted building, electrical, mechanical, or plumbing codes."  Rule 408.30501 defines "building inspector" as "the person who is appointed and employed by a governmental subdivision, who is charged with the administration and enforcement of the state codes specified in R 408.30499, and who is registered in compliance with 1986 PA 54, MCL 338.2301 et seq."  MCL § 338.2302(i) defines "inspector" as "the person responsible for the administration and enforcement of the construction of buildings, structures, or appurtenances under the requirements of the applicable building, electrical, mechanical, or plumbing code administered and enforced."

Forner argues that at the time of his termination, he was no longer the Township's building official, as that position had been contracted to Hopkins in July 2005.[2]   Forner claims that he was merely a "mechanical inspector" at the time of his termination.  However, Forner concedes that he "still had some duties as building inspector," because the Township permitted Forner to finalize building permits, except for those located in the flood zone.  Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. at 10.)

In response, the Defendants cite Michigan Administrative Code Rule 408.30904a, which creates the position of mechanical inspector, and Michigan Mechanical Code Section 104, which provides that code officials "shall enforce the provisions of the code" and "shall act on any question relative to the installation, alteration, repair, maintenance or operation of mechanical systems." (Michigan Mechanical Code § 104.1.)  A code official "shall receive applications and issue permits for the installation and alteration of mechanical systems, inspect the premises for which such permits have been issued and enforce compliance with the provisions of this code." (*Id*. § 104.3.) The code also provides that code officials "shall have the authority to grant modifications for individual cases" where "there are practical difficulties involved in carrying out the provisions of this code." (*Id*. § 105.1.)  Based upon the fact that Forner held the codified positions of mechanical inspector, building

---

[2] In a case involving the removal of an employee from a public office for political considerations, rather than based on the employee's speech, the Sixth Circuit instructed that "a court's analysis should focus on the nature of the office when the defendants first formed the intent to abolish the plaintiff's position." *Feeney v. Shipley*, 164 F.3d 311, 320 (6th Cir. 1999).  In this case, the Township may have formed the intent to terminate Forner's employment when it removed Forner from the interim building official position and restricted his building inspector duties.  *See id*. at 318-20 (looking at whether party affiliation was an appropriate requirement for the performance of the plaintiff's position at the time his superiors decided to abolish the position rather than during the period of reinstatement prior to his final termination).  Regardless of when the Township formed the intent to terminate Forner's employment, Forner was occupying a category one or two position at the time because Forner was performing some duties as a building inspector and was employed as a mechanical inspector throughout the period from his removal as building official to his termination in October 2005. (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. at 10.)

inspector and, on an interim basis, building official, Forner qualifies as occupying category one policymaking positions under *Rose*.

In addition to holding at least one position that meets the definition of a category one position, the job descriptions of Forner's positions support the Defendants' contention that Forner was, at a minimum, a category two position holder.  Under category two, an employee is considered to occupy a confidential or policymaking position if he exercises the same type of authority held by category one position holders in other jurisdictions or holds a position to which a significant portion of the discretionary authority available to category one position holders has been delegated.  *Latham*, 395 F.3d at 267.  Forner claims that only the building official possessed the discretion to interpret Michigan code and that the building inspector and mechanical inspector positions cannot be classified as a policymaking or confidential positions.

The statutory definitions of Forner's positions of building official, building inspector, and mechanical inspector support the Defendants' claim that Forner exercised the discretionary authority normally held by a category one position holder.  Moreover, Forner, in describing his job duties, has indicated that he had discretion regarding the enforcement of Michigan code.  Forner stated that the positions of building official and building inspector both involved enforcement of various state building codes and that he rendered interpretations of the building code at the request of residents and their agents.  (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. at 3, Exs. 12, 13; Pl.'s Dep. at 101.) According to Forner, the Township's policy was to comply with the codes, and Forner, whether as a building official or building inspector, was required to implement the Township's policy though interpretation and enforcement of the relevant state codes.  (Pl.'s Dep. at 102.)

Forner stated that, as a building official or building inspector, he used discretion in how to interpret code provisions.  (*Id*. at 119-20.)  Forner consulted with state officials regarding the interpretation of relevant code provisions, but "the final decision" regarding the interpretation of a

code "is always up to the local building official." (*Id*. at 123.)  Forner stated that the building inspector "has the authority to grant a modification for just about any provision in the code, as long as it doesn't jeopardize" the structure's strength or safety. (*Id*. at 121-22.)

Furthermore, Forner, as a building inspector, "was involved in most of the meetings, work sessions, etc. during which [the Township and county government agencies] discussed and planned for rebuilding and repairing the damaged properties." (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. at 2.) Although the Court must examine the inherent duties of Forner's positions rather than his actual tasks, "courts have considered the actual duties of the employee in order to determine the inherent duties of the position." *Latham*, 395 F.3d at 268, n.1 (citing *Gordon v. County of Rockland*, 110 F.3d 886, 888 (2d Cir. 1997)).  As evidenced by the communications between and among Forner, the Township, and the Township's counsel, Forner's duties included providing input on the Township's policymaking.

Finally, as in *Latham*, Forner exercised authority on behalf of a policymaker, in this case the Township.  Forner's duties were "broad and limited primarily by the discretion of the policymaker," as evidenced by Berens' directives to Forner that he stay out of the flood area and, upon the hiring of Hopkins in July, that Forner only work on active building inspections outside of the flood area. *See id*. at 269.  Therefore, Forner's employment positions fall within categories one and two of the confidential or policymaking employees exception discussed by the Sixth Circuit in *Rose*. As a result, Forner's claim that the Township violated his First Amendment rights when it terminated his employment fails as a matter of law.

**B.     State Law Whistleblower Claim**

Having concluded that Forner's federal claim should be dismissed, the Court must determine whether it should retain jurisdiction over Forner's state law claim.  "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson*

*Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)).  In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (affirming district court's order granting summary judgment on federal claim and dismissing state law claims without prejudice).  "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  *Musson*, 89 F.3d at 1254-55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)).  Having dismissed Forner's federal claim, the Court concludes that the state law claim should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  Conclusion

For the foregoing reasons, the Court will grant the Defendants' motion for summary judgment on Forner's 42 U.S.C. § 1983 claim and dismiss Forner's state law claim without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An Order consistent with this Opinion will be issued.


Dated:  August 7, 2007                                  /s/ Gordon J. Quist                
                                                                    GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE